## MRS. A. D. WATSON v. STATE.

### No. A-1787.    Opinion Filed October 20, 1913.

1.  **CHATTEL MORTGAGES—Sale of Mortgaged Property—Legal Effect.** Section 2755, Rev. Laws 1910 was enacted for the purpose of protecting mortgagees from fraud, annoyance and expense, and was intended only to give such mortgagees fair protection without imposing unnecessary, harmful and burdensome restrictions upon mortgagors.

2.  **SAME—Construction of Statutes.** In order for the foregoing section of the statute to be upheld, it is necessary that a reasonable, fair and liberal construction be given the same. If a strict, literal construction of the act as written be followed, it would become of doubtful validity.

3.  **SAME—Punishment.** The foregoing act subjects each and every person who violates the provisions thereof with intent to defraud a mortgagee, or who violates the provisions thereof and by reason of his act a fraud results against the rights of the mortgagee, to the punishment therein provided.

4.  **SAME—Mitigation—Payment—Consent.** A mortgagor who is prosecuted under this provision is always entitled to prove in mitigation of punishment that the mortgage debt has been paid, or that he had the verbal consent of the mortgagee to remove the property.

5.  **INDICTMENT AND INFORMATION—Prima Facie Case—Proof Necessary.** An information in the language of the statute, and proof tending reasonably to establish the allegations set forth in such inforamtion, would make a prima facie case on behalf of the state.

6.  **CHATTEL MORTGAGES — Fraud — Intent.** The proposition of whether or not a fraud was intended, or whether or not a fraud resulted to the mortgagee, would be a matter of defense.

(Syllabus by the Court.)

*Appeal from District Court, Garvin County;*
*R. McMillan, Judge.*

Mrs. A. D. Watson was convicted of unlawfully removing mortgaged property, and appeals. Reversed.

*Steel, Lake & Head* and *Carr & Field,* for plaintiff in error.

*C. J. Davenport.* Asst. Atty. Gen., for the State.

ARMSTRONG, P. J.    The plaintiff in error, Mrs. A. D. Watson, was convicted at the January, 1912, term of the district court of Garvin county, on a charge of willfully and unlawfully removing certain mortgaged property from Garvin county, wherein the property was situated and held under an existing, valid mortgage, without the written consent of the mortgagee.   The material facts in this case may be briefly stated as follows:

Mrs. A. D. Watson owed the Pauls Valley National Bank a sum of money, to secure which she had executed a mortgage on some fifteen head of livestock.    In the latter part of the year 1911, she concluded to move to Idabel, in McCurtain county, Oklahoma.    The written consent of the officers of the bank was not secured.    She offered to prove that she had the verbal consent of the cashier of the bank, but the court declined to permit this testimony to be introduced.    She also offered to prove that the debt, to secure which the mortgage was given, had been fully paid subsequent to the removal of the property. This privilege was denied by the court.    It appears that the case was tried upon the theory that the removal of property from the county in which the mortgage stands for record and is duly recorded, is a felony, and subjects the mortgagor to imprisonment in the state penitentiary, if same was so removed, unless the written consent of the mortgagee is had, and that no defense of any character was available, if this written consent was not first secured.    Counsel offered to introduce proof of the foregoing facts as a defense to the charge in the indictment. On being denied this privilege by the court, they then offered the proof and asked that it be submitted in mitigation of punishment; this was also denied.    In our judgment, the learned trial judge erred in both rulings.    The statute upon which this prosecution is based is as follows:

"Any mortgagor of personal property, or his legal representative, who, while such mortgage remains in force and unsatisfied, conceals, sells, or in any manner disposes of such property, or any part thereof, or removes such property, or any part thereof, beyond the limits of the county, or materially injures or willfully destroys such property, or any part thereof, without the

written consent of the holder of such mortgage, shall be deemed guilty of a felony, and shall, upon conviction, be punished by imprisonment in the penitentiary for a period not exceeding one year, or by a fine of not to exceed five hundred dollars; provided, that the writing containing the consent of the holder of the mortgage, as before specified, shall be the only competent evidence of such consent, unless it appear that such writing has been lost or destroyed." (Rev. Laws 1910, sec. 2755.)

It is evident that the trial judge endeavored to follow the strict letter of the act. This provision has not been before this court for construction heretofore. It is to be remembered that under the law in this state, a mortgage lien does not become extinct because of the removal of the property under mortgage from the county wherein the same is located and the mortgage recorded, to any other county in the state. This provision of the law then must have had some purpose in view other than upholding the validity of the mortgage. In our judgment, it was to protect a mortgagee from fraud, annoyance, and expense. It clearly could have been enacted for no other purpose.

The removal of mortgaged property from one county to another, as prohibited by this provision, is a felony. It would hardly be reasonable to conclude, having in view the policy of the law of this state, that the Legislature intended to give more than fair protection to the mortgagee, and *that* without unnecessary and harmful restrictions upon the mortgagor. It is a matter of common knowledge that in the agricultural sections of this state, a large per centage of the property of the population —and especially the rural population—is mortgaged between crop seasons for the purpose of securing money with which to erect improvements and produce crops, and with which to purchase supplies pending the harvest. It is also a matter of general information that in practically every county of the state, large numbers of people living in the agricultural districts occupy farms along the boundary lines of one county, and transact their business, market their crops and purchase their supplies in an adjoining county. Many of our important trading points are

near these boundary lines. This is a new country, wherein the demand for money with which to erect improvements of every kind is recognized as a burden upon the resources of many communities. It certainly was not the purpose of the Legislature to pass an act that would seriously and materially hamper the progress and development of great areas of the territory included in this state, nor was it their purpose to enact a statute that was intended to unreasonably and unnecessarily railroad the agricultural population of the state into the penitentiary. If this provision is to receive the construction placed on it by the trial court, then every farmer in the state who lived in one county and who, on account of convenience and proximity, found it necessary to market his crops and purchase his supplies in any near-by town in an adjoining county, if there happened to be a mortgage on any of his teams or vehicles used in the ordinary course of business in carrying his crops to market, or supplies from the market to his home, would be subject to prosecution and commitment to the penitentiary every time he crossed the boundary line on legitimate business.

We are not inclined to uphold this construction. The language used, however, strictly construed, would support this view. The construction of an identical statute by any other court, has not been called to our attention. We might observe, however, that this statute, strictly construed as written, is a most vicious measure and probably invalid. We are inclined to the view that it must have been the purpose of the Legislature to provide a statute which would give the mortgagee adequate and ample protection against fraud, annoyance, and unnecessary expense, and that therefore the intention of this act was to penalize any mortgagor who removed his property from one county to another in this state, and who by such removal either defrauded the mortgagee or intended to defraud him. In our judgment, the purpose of the law is accomplished when it is given this construction. Under this view, any mortgagor who removes mortgaged property, as prohibited, with the intent to defraud the mortgagee, would be guilty of a violation of the statute; or, if such mortgagor voluntarily removes such property

and by reason of such removal, fraud is actually perpetrated on the mortgagee, whether such fraud was conceived before the removal occurred or afterward, or whether such fraud was intended or not, such an act would be punishable as provided. It can hardly be said that a person should be sent to the penitentiary, deprived of citizenship, and branded as a felon for the remainder of his life, who has done no act which injured anyone and has done no act which was intended to injure anyone.

With a view of maintaining and upholding the acts of the Legislature, we are constrained to hold that an information drawn under this statute, in the language thereof, is probably sufficient, and that proof tending reasonably to establish the allegations set forth, would make a *prima facie* case for the state. The question of whether or not a fraud was intended, or whether or not a fraud resulted to the mortgagee would be a matter of defense. If a wrong or fraud was intended, or a wrong or fraud resulted, a conviction should follow; if not, an acquittal should follow. There is no doubt but that in any event the good faith of the mortgagor and his reasonable explanation of his acts would be entitled to go to the jury in mitigation of punishment, as likewise would be a showing that the mortgage debt had been paid.

For the errors indicated, the judgment is reversed and the cause remanded, with direction to grant a new trial.

DOYLE, J., concurs. FURMAN, J., absent.